[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 84 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 85 
William M. Turner and Kathryn S. Turner sued Dryvit Systems, Inc., Apache Products, Inc., John Harrison d/b/a Capitol City Plastering, Jenkins Manufacturing Co., Inc., Westhampton Court, L.L.C. ("Westhampton"), and numerous fictitiously named defendants, asserting various claims for damages arising from the use of an exterior insulating finishing system ("EIFS"), a synthetic stucco used in the construction of the Turners' new house. The trial court granted Westhampton's motion for a summary judgment and eventually dismissed all of the other defendants. The Turners timely appealed.
In February 1996, the Turners purchased a house from Westhampton, which had acted as the general contractor in the construction of the house. The sales contract, which was executed by Westhampton, as the seller, and William M. Turner, as the purchaser, contains the following language: *Page 86 
 "10. BUILDER WARRANTY: At closing Seller shall furnish Purchaser a written warranty on the dwelling for a period of at least one year."
At the closing of the purchase of the home, a "Limited New Home Warranty" ("the warranty") was given to the Turners by Westhampton; the warranty provided, in pertinent part:
 "WHEREAS, Builder [Westhampton] does hereby agree to give a limited warranty on the Home located at the above property for a period of one (1) year following closing or occupancy by the Purchaser [William M. Turner], whichever event shall first occur. . . .
". . . .
 "2. Builder warrants the above Home to be free from latent defects for a period of one (1) year following closing or occupancy, whichever event shall first occur.
". . . .
 "THIS WARRANTY IS GIVEN IN LIEU OF ANY AND ALL OTHER WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY AND WORKMANSHIP. . . .
 "3. The Builder [Westhampton] shall not be liable under this Agreement unless written notice of the latent defect shall have been given by Purchaser to Builder within the one (1) year warranty period. Steps taken by the Builder to correct any defect or defects shall not act to extend the warranty period described hereunder.
 "4. The Purchaser shall have 90 days after expiration of the one (1) year warranty period to bring any legal action hereunder."
(Capitalization in original.)
The warranty defined "latent defect" as follows:
 "A latent defect in the construction is herein defined as a defect not apparent at time of occupancy or closing, but which becomes apparent within one (1) year from date of closing or occupancy, whichever event shall first occur, and such defect has been directly caused by Builder's failure to construct in accordance with the standards of construction prevailing in the geographical area of the Home. It is stressed, however, that normal characteristic behavior of building materials, wear and tear, general maintenance, and like terms, will not constitute a latent defect."
The warranty on the home expired in February 1997. In April 2001, Mr. Turner noticed that his floor was bowing. After discussions with a coworker who brought up the possibility of moisture intrusion into the house, the Turners hired an inspector to examine the house. The inspector reported that the EIFS on the house had not been installed according to the manufacturer's specifications and that consequently water had damaged parts of the Turners' house.
On June 22, 2001, more than five years after the Turners closed on the house, the Turners sued Westhampton and others. Westhampton filed a motion for a summary judgment, which the trial court granted on September 24, 2002. On November 3, 2003, the last defendant in the action was dismissed, making all judgments final on that date. The Turners timely filed their notice of appeal from the summary judgment in favor of Westhampton on December 8, 2003. *Page 87 
The Turners allege several claims of negligence and wantonness, one claim of breach of an express warranty, one claim of breach of the implied warranty of habitability, and one claim of breach of contract.
 Standard of Review
We review a summary judgment de novo. Williams v. State FarmMut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that there exists no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross Blue Shield of Alabamav. Hodurski, 899 So.2d 949, 952 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758
(Ala. 1986). Once the movant makes a prima facie showing that he is entitled to a summary judgment, the burden shifts to the nonmovant to produce "substantial evidence" creating a genuine issue of material fact. Ala. Code 1975, § 12-21-12; Bass v.SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Fla.,547 So.2d 870, 871 (Ala. 1989).
 I. General Negligence/Wantonness Claim
The Turners first appeal the trial court's summary judgment in favor of Westhampton as to their claim asserting general negligence and/or wantonness in the construction of their house. In its motion for a summary judgment, Westhampton pleaded the statute of limitations as an affirmative defense to this claim.
The Turners argue that their cause of action for negligence and/or wantonness accrued upon their discovery of the defect in April 2001, citing Ala. Code 1975, § 6-5-220(e), which allows certain plaintiffs to file an action within two years from the date of discovery of any latent damage or defect. This "discovery rule," however, is limited to actions against an "architect, engineer, or builder, as defined in [§§ 6-5-220 through -228]." Ala. Code 1975, § 6-5-221(b) (emphasis added).
Westhampton, however, argues that it does not fit within the following statutory definition of a "builder" found in § 6-5-220:
 "Any individual, partnership, firm, or corporation that constructed, or performed or managed the construction of, an improvement, or any portion thereof, on or to real estate, and [which] at the time of the construction was licensed as a general contractor in the State of Alabama."
Ala. Code 1975, § 6-5-220(a) (emphasis added).
Westhampton argues that it is not licensed as a general contractor in the State of Alabama and that it therefore does not fit within that definition. However, our review of the record shows that Westhampton did not present this argument in support of its summary-judgment motion.
Summary judgment cannot be entered against the nonmoving party on the basis of a failure of that party's proof unless the motion for summary judgment has challenged that failure of proof. Exparte McCord-Baugh, 894 So.2d 679 (Ala. 2004); McKenzie v.Killian, 887 So.2d 861 (Ala. 2004); Hollis v. City ofBrighton, 885 So.2d 135 (Ala. 2004); Liberty Nat'l Life Ins.Co. v. University Health Servs. *Page 88 Found., P.C., 881 So.2d 1013 (Ala. 2003); and Tanner v. StateFarm Fire Cas. Co., 874 So.2d 1058 (Ala. 2003).
This Court can affirm a trial court's judgment for any reason, but only if the record on appeal evidences the fact that is the basis for the affirmance. Ex parte Ryals, 773 So.2d 1011, 1013
(Ala. 2000). Reviewing the facts in the light most favorable to the Turners, we conclude that the trial court erred in entering a summary judgment for Westhampton as to the Turners' general negligence and/or wantonness claim.
 II. Other Negligence/Wantonness Claims
The Turners next appeal the trial court's summary judgment in favor of Westhampton as to the Turners' claims asserting (1) negligent and/or wanton application of the EIFS; (2) negligent and/or wanton hiring, training, supervision, and retention of the independent contractors; and (3) negligent and/or wanton failure to warn.[1]
 A. Negligent/Wanton Application of the EIFS
In its summary-judgment motion, Westhampton argued that it was not liable for the torts of the independent contractor who installed the EIFS. The Turners responded by arguing that "regardless of how carefully or skillfully performed, installation of the EIFS would have likely resulted in the damage now experienced by the [Turners]." On appeal, however, the Turners argue that Westhampton owed them a non-delegable duty to apply the EIFS properly.
Generally, a general contractor is not liable for the negligence of his independent contractor. Knight v. Burns,Kirkley Williams Constr. Co., 331 So.2d 651, 655 (Ala. 1976). There are two common exceptions to this rule: First, the principal remains liable for work that "is of such kind or class that the doing of it, however carefully or skillfully performed, will probably result in damage, or is necessarily and intrinsically dangerous." Baker v. Atlanta, B. A. Ry.,163 Ala. 101, 105, 49 So. 751, 752 (1909). Second, the principal is liable for "the manner of the performance of his non-delegable duties." Dixie Stage Lines v. Anderson, 222 Ala. 673, 675,134 So. 23, 24 (1931).
The Turners' response to Westhampton's summary-judgment motion[2] argued only the application of the first exception (that application of the EIFS was abnormally dangerous). On appeal, however, the Turners argue only the application of the second exception (that the duty undertaken by Westhampton was nondelegable). Because the Turners failed to raise before the trial court the only argument that they raise on appeal, i.e., that Westhampton owed them a nondelegable duty, they have waived that argument, and we will not address it. Cainv. Howorth, 877 So.2d 566, 578 (Ala. 2003) ("`on an appeal from a summary judgment, this Court cannot *Page 89 
hold the trial court in error on the basis of arguments made for the first time on appeal'"). Therefore, the trial court did not err in entering a summary judgment for Westhampton on the Turners' negligent- and/or wanton-application claim.
 B. Negligent/Wanton Hiring, Training, Supervision, and Retention
The Turners also allege that Westhampton was negligent and/or wanton in its hiring, training, supervision, and retention of the independent contractors who applied the EIFS (the "negligent-hiring claim"). As mentioned in note 2, in their brief opposing Westhampton's summary-judgment motion, the Turners argued that the application of the EIFS was inherently or abnormally dangerous. On appeal, the Turners again argue that the application of the EIFS was abnormally dangerous. Additionally, in their brief on appeal, the Turners argue that a principal contractor can be liable for his "negligence in selecting, instructing, or supervising the independent contractor." We cannot address this latter argument, because it has been raised for the first time on appeal. Cain v. Howorth, supra.
We endeavor, however, to address the Turners' argument that application of the EIFS is an abnormally dangerous activity underRestatement (Second) of Torts § 520 (1977). The Turners contend that the abnormal danger presented by the EIFS is best illustrated by one of Westhampton's representatives, who stated:
 "[A] lot of problems with EIFS houses is if there is any intrusion of water, it's such a tight envelope and there's no air exchange, there's no way — like in a brick veneer house, you're going to get water intruding in brick veneer because it's not a waterproof system. That's why you have a one-inch airspace behind the brick so that any moisture that may condensate [sic] or may find its way through the mortar joints or whatever is going to run down the back of the brick and eventually end up on the foundation and out [w]eep holes. But you have the ability for the moisture to escape or dissipate. Any intrusion on an EIFS house is trapped. It doesn't readily evaporate because it's a tight system."
The Turners' argument, in essence, is that "regardless of how carefully or skillfully performed, installation of the EIFS would have likely resulted in the damage now experienced." The above-quoted statement by Westhampton's representative, the Turners contend, demonstrates that intruding water will always be trapped in a house finished with EIFS and will always cause moisture damage. Therefore, they argue, application of EIFS is an activity that inherently causes damage to a house. This argument is questionable. However, we need not examine it in detail, because, however true the Turners' argument may be, their claim must fail.
In Dickinson v. City of Huntsville, 822 So.2d 411, 417 n. 2 (Ala. 2001), this Court noted:
 "In Harper v. Regency Development Co., 399 So.2d 248, 253 (Ala. 1981), this Court, citing the Restatement (Second) of Torts § 520 (1977), set forth the following factors to be considered in determining whether an activity is abnormally dangerous:
 "`(a) evidence of a high degree of risk of some harm to the person, land or chattels of others;
 "`(b) likelihood that the harm that results from it will be great;
 "`(c) inability to eliminate the risk by the exercise of reasonable care;
 "`(d) extent to which the activity is not a manner of common usage; *Page 90 
 "`(e) inappropriateness of the activity to the place where it is carried on; and
 "`(f) extent to which its value to the community is outweighed by its dangerous attributes.'"
Based upon an analysis of all of the factors set out above, we conclude that the application of EIFS on a house is not an abnormally dangerous activity. Accordingly, we hold that the trial court did not err in entering a summary judgment as to the Turners' negligent-hiring claim.
 C. Failure to Warn
The Turners next argue that Westhampton failed to warn them (1) that Westhampton had failed to ensure that the construction of their house complied with applicable building standards; (2) that EIFS requires a "high degree of maintenance" to avoid serious problems; (3) that Westhampton had specified that EIFS, an exterior cladding known to have serious inherent problems, be applied to the Turners' house; and (4) that Westhampton did not supervise the work of the independent contractors.
The Turners cite only one case in support of their theory that Westhampton had a duty to warn them of the items listed above. InBerkel Co. Contractors, Inc. v. Providence Hospital,454 So.2d 496, 505 (Ala. 1984), we stated that "`[a] duty to speak depends upon the relation of the parties, the value of the particular fact, the relative knowledge of the parties, and other circumstances.'" (Quoting Jim Short Ford Sales, Inc. v.Washington, 384 So.2d 83, 86 (Ala. 1980).) However, this quotation concerns one's duty to speak in the context of a fraudulent-suppression claim, not a claim alleging a failure to warn.
Examining the question independently of the Turners' brief, we acknowledge that Alabama law recognizes a cause of action for failure to warn. A plaintiff has the option of alleging failure to warn as a matter of negligence, under the Alabama Extended Manufacturer's Liability Doctrine ("the AEMLD"), or both.
Central to both theories of a failure-to-warn claim is the absence of a warning accompanying the sale of a "product." InKeck v. Dryvit Systems, Inc., 830 So.2d 1, 7 (Ala. 2002), this Court clearly stated that EIFS cannot be considered a "product." Although our holding in Keck concerned the definition of a "product" for purposes of the AEMLD, both that doctrine and negligence are creatures of the common law. No statute defines a "product" differently for purposes of the AEMLD, on the one hand, and for purposes of a common-law negligence action, on the other. Therefore, we see no reason to define a "product" differently for purposes of a failure-to-warn claim sounding in negligence. Consequently, we cannot hold that the trial court erred in entering a summary judgment for Westhampton on the Turners' failure-to-warn claim.
 III. Breach-of-Warranty Claims
The Turners allege that Westhampton breached the terms of the warranty, which was an express warranty. They also allege that Westhampton breached the implied warranty of habitability. The trial court entered a summary judgment in favor of Westhampton as to both claims.
An action alleging a breach of warranty is a subset of a breach-of-contract action. A plaintiff's cause of action for breach of warranty "accrues and the statute of limitations begins to run on the date the defendant completes performance."Stephens v. Creel, 429 So.2d 278, 280 (Ala. 1983). In the context of construction of a house, this Court explained inStephens that "[b]y its very nature it is the *Page 91 
failure to construct the house in a workmanlike manner that constitutes the breach" of the warranty. 429 So.2d at 280. The statute of limitations on a breach-of-express-warranty action is six years. Ala. Code 1975, § 6-2-34(9); the statute of limitations on a breach-of-the-implied-warranty-of-habitability claim, while limited to a reasonable time, can extend as long as six years.Sims v. Lewis, 374 So.2d 298, 305 (Ala. 1979) (citing Ala. Code 1975, § 6-2-34).
Westhampton completed performance during the month of February 1996. This action was filed on June 22, 2001. The Turners filed this action within the applicable six-year limitations period.
 A. The Limited New-Home Warranty
The warranty provided the Turners with coverage for one year from the date they closed on the purchase of the home. However, in order for Westhampton to be liable under the warranty, the Turners were obligated to fulfill two separate requirements.
As the Turners acknowledge, paragraph 4 of the warranty requires them to bring any legal action alleging a breach of the warranty within 90 days of the expiration of the one-year warranty. However, as the Turners note, and as we stated above, the Legislature has provided a six-year statute of limitations on breach-of-warranty actions. Ala. Code 1975, § 6-2-34(9). Moreover, Ala. Code 1975, § 6-2-15, provides that "any agreement or stipulation, verbal or written, whereby the time for the commencement of any action is limited to a time less than that prescribed by the law for the commencement of such action is void." Clearly the 90-day provision in the warranty does not override the 6-year statute of limitations.
However, the Turners have failed to address the other requirement set out by the warranty. Paragraph 3 provides that "[Westhampton] shall not be liable under this Agreement unless written notice of the latent defect shall have been given by [the Turners] to [Westhampton] within the one (1) year warranty period." Such a provision is not akin to a statute of limitations. Rather, such a provision operates as a waiver of the Turners' right to sue under the warranty if they fail to give notice of the defect within the one-year warranty period.
In Ex parte Miller, 693 So.2d 1372, 1376 (Ala. 1997), a case decided under Alabama's version of the Uniform Commercial Code, we held that a company can limit its warranty coverage. InSouthern Energy Homes v. Washington, 774 So.2d 505, 511 (Ala. 2000), we held that a warranty can require a certain method by which the warranty holder notifies the party giving the warranty of a defect covered by the warranty. See also CopenhagenReinsurance Co. v. Champion Home Builders Co., 872 So.2d 848
(Ala.Civ.App. 2003). If a purchaser were to attempt to hold the seller liable when the purchaser had not notified seller pursuant to the method set out in the warranty, the seller would not be liable. While these cases are based upon Alabama's Commercial Code, we see no reason to limit the rule to cases concerning "goods." Rather, we are led by the principle of freedom of contract. Therefore, we hold that companies selling houses are similarly capable of limiting warranty coverage.
The warranty in this case requires that the purchaser give notice of the defect within one year of the commencement of the warranty. The Turners have failed to provide any evidence indicating that they provided the required notice within that period. Therefore, the trial court did not *Page 92 
err in entering a summary judgment for Westhampton.[3]
 B. The Implied Warranty of Habitability
The warranty signed by the Turners included text set off in a box from the rest of the document. This box contained capital letters in a font larger than the rest of the text; the boxed text stated, in pertinent part:
 "THIS WARRANTY IS GIVEN IN LIEU OF ANY AND ALL OTHER WARRANTIES, EITHER EXPRESSED OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, HABITABILITY AND WORKMANSHIP. . . ."
(Capitalization original; emphasis added.) The box containing the above text also contained a line for the purchaser to initial, signaling the purchaser's agreement with the statement. Mr. Turner initialed this line. On appeal, the Turners argue that the disclaimer was "wholly unreasonable and in contravention to the stated purpose of the law."
In Cochran v. Keeton, 47 Ala.App. 194, 199, 252 So.2d 307,311-12 (Civ. 1970) ("Cochran I"), the Court of Civil Appeals first recognized the implied warranty of habitability in the sale of a new house in Alabama. This Court affirmed the judgment of the Court of Civil Appeals, agreeing that the time had come to recognize such a warranty. Cochran v. Keeton, 287 Ala. 439,440-41, 252 So.2d 313, 314-15 (1971) ("Cochran II").
In Cochran I, the Court of Civil Appeals wrote:
 "This State long ago adopted the law of manufacturers liability and has codified the law of implied warranty in the sale of goods by adopting the Uniform Commercial Code (Title 7A, Article 2 — 1967). It is totally incongruous that the purchaser of an automobile, a refrigerator or almost any other item of personal property is protected from negligent manufacture or unfitness of use, but the purchaser of a new home should be at the mercy of an unscrupulous builder and seller.
 "The purchase of a new home is usually the largest single purchase of a lifetime, and a lifetime is required to pay for it. Particularly today, a seller's market prevails and the purchaser is in no position to force inclusion of express warranties in a deed. There are myriad possibilities of hidden and latent defects in the construction of a home, and most purchasers are not capable by training or experience to detect or recognize them. This is an era of mass production of houses, just as it is of consumer goods. The courts gave birth to the rule of caveat emptor. The courts must now give relief from it. Manufacturers' liability and implied warranty in the sale of personal property were first recognized in the courts, and legislative action followed."
(Emphasis added.)
Though we have never decided whether one can effectively disclaim the implied warranty of habitability, one can disclaim an implied warranty as to personal property. Ala. Code 1975, §7-2-316(3). Because it was the existence of an implied warranty as to personal property that was said to justify the recognition of an implied *Page 93 
warranty of habitability of a new house, should we not hold that this court-created warranty can be contracted away where a reasonable express warranty of some duration is given to the purchaser of the new house in lieu of that implied warranty?
This is not an area of law that has been traditionally entrusted to the Legislature. Real-estate transactions have traditionally been governed by the common law, and the concept at issue here — the implied warranty of habitability on a new house — is itself a creature of the common law.
These considerations lead us to conclude that the principle of freedom of contract permits a party to effectively disclaim the implied warranty of habitability. To succeed on their claim of breach of the implied warranty of habitability then, the Turners would have to offer substantial evidence indicating that they did not disclaim the implied warranty of habitability.
In this case, Westhampton offered the Turners the warranty when the Turners purchased their house. The warranty was offered in consideration for the Turners' waiving all other warranties — express and implied. The Turners are both professionals: Mrs. Turner is a registered nurse who now homeschools one of their children; Mr. Turner is a board-certified physician's assistant. Mr. Turner has stated that he read "every word of the new home warranty before signing it." The Turners have produced no evidence whatsoever indicating that they did not agree to disclaim all implied warranties; indeed, the evidence indicates the opposite.
We hold that the trial court did not err in entering a summary judgment in favor of Westhampton as to the Turners' breach-of-implied-warranty claim.
 IV. Breach-of-Contract Claim
The Turners' third allegation is that Westhampton breached the contract of sale by tendering a poorly built house. Specifically, the Turners argue that Westhampton contracted to build the house in accordance with the skill and abilities of a homebuilder and that Westhampton failed to perform this contractual duty. While the Turners characterize this as a cause of action for breach of contract, the cause of action is more accurately classified as one for the breach of the implied warranty of workmanship.
The law implies a duty upon all contracting parties to use reasonable skill in fulfilling their contractual obligations.Sherrill v. Alabama Appliance Co., 240 Ala. 46, 50, 197 So. 1,4 (1940); Mobile Life Ins. Co. v. Randall, 74 Ala. 170, 176-77
(1883). In the context of the sale of a new house, a builder-vendor such as Westhampton is obligated to construct a house that it will offer for sale in a workmanlike manner.Stephens v. Creel, 429 So.2d 278, 280 (Ala. 1983). This obligation manifests itself in the implied warranty of workmanship. While improper or faulty construction constitutes a technical performance of the contract and may survive a pure breach-of-contract action, an action alleging the breach of an implied warranty, such as the implied warranty of workmanship, can overcome this obstacle.
On appeal, the Turners' evidence indicates that the house Westhampton sold the Turners was improperly constructed. The evidence indicates that a house inspector found that the EIFS had been improperly installed and that the improper installation of the EIFS caused the damage to the Turners' house.
Upon purchasing the house, the Turners signed the warranty provided by Westhampton. The warranty, as discussed above, included a waiver of the right to sue under any other theory of breach of warranty, express or implied. In fact, the *Page 94 
warranty explicitly stated that the Turners waived the right to sue based on a breach of the implied warranty of workmanship. Because the warranty contained a disclaimer of the very claim the Turners here allege, the trial court did not err in entering a summary judgment in favor of Westhampton on this claim.
 Conclusion
Based on the above, we hold that the trial court erred in entering a summary judgment for Westhampton on the claim of general negligence and/or wantonness, but that it did not err in entering a summary judgment on all the remaining claims. We remand the case to the trial court for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NABERS, C.J., and SEE, LYONS, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
JOHNSTONE, J., concurs in part and dissents in part.
[1] The Turners list a number of claims as to which they contend they have not appealed. The Turners do not list "negligent and wanton design of the structure" as one of those claims they have chosen not to appeal. However, the Turners fail to argue this claim in their briefs upon appeal; therefore this claim is waived.
[2] It appears that the Turners' negligent-application claim, as presented in their motion opposing summary judgment, lacks any legal argument. All legal argument seems reserved for their negligent-hiring argument. However, we will treat both the negligent-application and the negligent-hiring claims as advancing the same argument — that application of the EIFS involved an abnormally dangerous activity.
[3] Contrast this situation with the following hypothetical situation: Suppose the Turners notified Westhampton of damage within the one-year time frame contemplated by the warranty. The Turners would then be free to file an action based on that damage at any time before the expiration of the six-year statutory limitations period.