Gene E. Hess appeals from a summary judgment entered in favor of The Market Investment Company, LLC ("Market Investment"), 2011 Corporation, and George Herscu (hereinafter referred to collectively as "the defendants").
This case centers around an alleged oral contract between Hess and 2011 Corporation. Herscu is the majority shareholder and the chief executive officer of 2011 Corporation, and serves as the president of an entity known as Rice Development, LLC ("Rice Development"), which consists of 2011 Corporation and two individuals, Dennis Rice and David Rice ("the Rice brothers"). All the parties are involved in various aspects of real-estate investment, and it is in the context of real-estate speculation that the facts of this case unfold.
Hess briefly served as the chief financial officer of Rice Development. Upon the termination of his employment as chief *Page 141 
financial officer, Hess agreed to assist Rice Development in training a new chief financial officer. In the course of providing this assistance, on October 29, 2002, Hess was approached by Herscu, who, on his own behalf and on behalf of 2011 Corporation, proposed a business deal that interested Hess.
According to Hess, to whom we must afford all reasonable inferences from the evidence, viewing the evidence in the light most favorable to him, the details of this business deal were as follows. Hess would serve 2011 Corporation as an "independent contractor consultant." He would "look for new opportunities for development or acquisition" and perform functions such as due diligence investigations relating to those opportunities. In return, 2011 Corporation would compensate Hess by paying him $5,000 per month, paying his out-of-pocket expenses, and allowing him to enjoy an "equity participation"[1] in the opportunities developed or acquired as the result of his activities. The equity participation was to be modeled after a similar arrangement between 2011 Corporation and the Rice brothers and reflected in the operating agreement of Rice Development. That operating agreement provides that "Profit or Loss shall be allocated to the Interest Holders as follows: . . . Eighty percent to 2011 Corporation . . . Ten (10%) to Dennis Rice . . . [and] Ten percent (10%) to David Rice. . . ." Thus, under his oral agreement with 2011 Corporation, Hess would have an "equity participation" of 20%.
Shortly after Hess began serving 2011 Corporation as a consultant, he and Herscu traveled to Daphne on business. While in Daphne, the parties noticed a shopping center located on U.S. Highway 98 — the Magnolia Place shopping center. Hess and Herscu determined that Magnolia Place was an ideal real-estate purchase for 2011 Corporation; consequently, Hess performed a due diligence investigation and began making many of the arrangements for 2011 Corporation to purchase Magnolia Place.
On December 12, 2002, Magnolia Place was sold at a mortgage foreclosure sale to Herscu and other corporate entities in which he was involved. Between the date of the foreclosure sale and the actual closing date, however, Herscu apparently ordered all parties associated with the sale that they were "not to communicate with [Hess] about the transaction anymore," because he was "no longer involved" in the project. In early January 2003 Herscu and his son Robert formed Market Investment, a Delaware limited-liability company; on January 23, 2003, Market Investment took title to Magnolia Place. Hess owned no shares of Market Investment and, as a result, did not share in the profits from Magnolia Place.
On February 5, 2003, Hess filed a notice of lis pendens with the Baldwin Probate Court concerning Magnolia Place. On February 18, 2003, Hess filed the underlying action against the defendants in the Baldwin Circuit Court, alleging breach of contract, fraud, and fraudulent concealment, and praying for the enforcement of the lien noticed by the lis pendens. In his complaint, Hess alleged that under his arrangement with 2011 Corporation and Herscu he was to receive a 20 percent ownership interest in Magnolia Place. *Page 142 
On March 26, 2004, the defendants moved for a summary judgment, arguing only that to be enforceable, a contract for an interest in land must satisfy the Statute of Frauds, Ala. Code 1975, §8-9-2(5). Hess responded to the defendants' motion for a summary judgment, arguing that the contract between him and 2011 Corporation was an employment contract, which does not fall within the Statute of Frauds. On June 28, 2004, the trial court granted the defendants' motion for a summary judgment. Hess appeals.
 Standard of Review
This Court reviews a summary judgment de novo. Turner v.Westhampton Court, L.L.C., 903 So.2d 82, 87 (Ala. 2004). We seek to determine whether the movant has made a prima facie showing that there exists no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Turner, 903 So.2d at 87. In reviewing a summary judgment, this Court reviews the evidence in the light most favorable to the nonmovant. Turner, 903 So.2d at 87. Once the movant makes a prima facie showing that he is entitled to a summary judgment, the burden then shifts to the nonmovant to produce "substantial evidence" creating a genuine issue of material fact. Ala. Code 1975, § 12-21-12; Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989).
 Analysis
Hess's sole contention on appeal is that the oral contract into which he, Herscu, and 2011 Corporation allegedly entered falls outside of the Statute of Frauds. Although Hess's statement of facts alleges that he "memorialized" the contractual negotiations and the resulting contract with a writing, Hess does not argue on appeal that this or any writing satisfied the requirement of the Statute of Frauds that a contract for an interest in land be in writing. Hess arguably attempted to make this latter argument before the trial court, but by not doing so before this Court, has waived that argument on appeal.
As noted above, the defendants contend that if the oral contract was enforced, Market Investment would be obligated to convey to Hess a 20 percent interest in Magnolia Place. Hess offers conflicting assertions as to what he was to receive under the contract and what he currently seeks; however, as explained below, even assuming Hess claims an interest in land, the summary judgment was erroneous. There is support for this assumption, because Hess asserts in his response to the defendants' motion for a summary judgment and in each of his briefs before this Court that he is claiming an interest in Magnolia Place. In his response to the defendants' motion for a summary judgment, Hess argues that he is to be compensated by an equity participation in property. On appeal, Hess argues in his initial brief that under the contract, he would be compensated by "an equity participation in property." (Hess's brief, at p. 33.) In his reply brief Hess twice argues that he seeks such an interest, namely by contending that the oral contract "called for compensation in the form of equity participation in real property" (Hess's reply brief, at p. 16), and by contending that he should receive "an equity participation in properties acquired" as a result of his efforts. (Hess's reply brief, at p. 17.)
Alabama's Statute of Frauds provides, in pertinent part: *Page 143 
 "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
". . . .
 "(5) Every contract for the sale of lands . . . or of any interest therein, except leases for a term not longer than one year. . . ."
Ala. Code 1975, § 8-9-2(5).
The Statute of Frauds has repeatedly been found to apply to oral contracts whereby one party agrees to purchase an interest in a partnership that conveys or is conveyed title to lands or an interest in lands. Wilson v. Southside Shopping Ctr., Inc.,280 Ala. 615, 620, 197 So.2d 267, 271 (1967); Pierce v. Murphree,274 Ala. 20, 27, 145 So.2d 207, 214 (1962); Talley v. Talley,248 Ala. 84, 87, 26 So.2d 586, 589 (1946); Reilly v. Woolbert,196 Ala. 191, 194, 72 So. 10, 11 (1916); Butts v. Cooper,152 Ala. 375, 382, 44 So. 616, 619 (1907). Although typically the consideration furnished in order to obtain such an interest is a payment of cash, Wilson, 280 Ala. at 617, 197 So.2d at 268;Reilly, 196 Ala. at 193, 72 So. at 11; Butts,152 Ala. at 378-79, 44 So. at 617, the consideration may also take the form of services intended to be performed by the purchasing party.Pierce, 274 Ala. at 24, 145 So.2d at 211 (where the "products of [appellant's] labors and rents were to be used as a fund" to purchase land); Talley, 248 Ala. at 86, 26 So.2d at 588 (where the appellee paid her portion of the purchase price by "keeping the household and working as a field hand").
Hess argues that the above decisions are inapplicable here and that this case does not constitute a "sale" of land or of an interest in land, because, he says, his contract with the defendants was an employment contract and his equity participation constituted "compensation." This Court must therefore determine whether a contract whereby one party is to purchase land and convey to another title to an interest in that land by way of "compensation" is meaningfully different from a contract whereby one party is to purchase land and convey to another title to an interest in that land by virtue of a "sale."
Hess argues that principles of statutory construction command this Court to find the oral contract to be within the Statute of Frauds only if the contract accomplishes a "sale" of land or of an interest therein, as that term is used in ordinary parlance. Hess contends that to find the contract enveloped by the Statute of Frauds despite its not being a "sale" would violate such principles. In support of this approach, Hess cites Byrd v.Bentley, 850 So.2d 232 (Ala. 2002). In Byrd, the defendants and Bentley orally agreed that if Bentley met certain business goals, he would be compensated with a 30% ownership interest in the defendants' business. Bentley met those performance goals, the defendants denied him the ownership interest, and Bentley sued the defendants, who pleaded the affirmative defense of the Statute of Frauds. The Statute of Frauds requires a writing in the case of "every agreement for the sale or purchase of [certain] securities" Ala. Code 1975, § 8-9-2(8). This Court — noting that the defendants had cited no Alabama caselaw to support their Statute of Frauds argument and also observing that there existed no caselaw addressing whether the oral contract constituted a sale of securities — looked to other jurisdictions for guidance. We stated that we were "most persuaded by those jurisdictions that view similar agreements not as `sales of securities,' but as employment *Page 144 
contracts," and we concluded that the oral contract was an employment contract and was not subject to the Statute of Frauds.Byrd, 850 So.2d at 240. Hess urges this Court to adopt Byrd
in the context of contracts concerning interests of land.
This Court can find no Alabama case otherwise discussing whether a transaction conveying land or an interest in land must always be labeled a "sale" or whether such a transaction can be viewed as "compensation." Further, we can find no precedent from other jurisdictions directly addressing the issue. Thus, ifByrd's rationale is not limited to cases involving securities but can apply to other conveyances, this Court will be obliged to extend the rationale of Byrd to the facts of this case.
There are two persuasive reasons for applying the reasoning ofByrd to the instant case. First, although it construes a different subsection of the Statute of Frauds than is at issue here, Byrd nevertheless confronts a provision of the Statute of Frauds, the same statute at issue before this Court. Additionally, Byrd draws a distinction between "sales" of securities and "employment contracts" resulting in the acquisition of securities despite the fact that the two acts accomplish functionally identical results; thus it lends credibility to Hess's argument that such a distinction is material.
The defendants do not meaningfully respond to Hess's argument that the oral contract constitutes an employment agreement providing for compensation by means of an interest in land. They simply refer to the line of cases concerning partnerships involving the sale of land, claiming that those cases are the correct precedent. The defendants do, however, point out that unlike Bentley in Byrd, Hess is not an employee but an "independent contractor consultant." In this status, the defendants argue, Hess is more akin to a partner than an employee. The question of Hess's exact legal status presents a genuine issue of material fact that is inappropriate for resolution on a motion for a summary judgment.
Because the oral contract was to convey to Hess an interest in Magnolia Place not as the result of his purchasing such an interest in a "sale," but as compensation for services Hess rendered to Herscu and 2011 Corporation, we hold that the contract falls outside of the Statute of Frauds and is not rendered unenforceable by virtue of it.
 Conclusion
We reverse the judgment of the trial court and remand the cause for proceedings consistent with this opinion.
REVERSED AND REMANDED.
NABERS, C.J., and SEE, STUART, and BOLIN, JJ., concur.
[1] Hess offers no clear meaning for the phrase "equity participation." At times he asserts that it includes an equity participation in real property; at other times he asserts that it includes an equity participation in 2011 Corporation. Despite his vacillation on this point, we take the phrase to include an equity participation in real property acquired by his efforts as a consultant for 2011 Corporation.