AmerUs Life Insurance Company appeals by permission, pursuant to Rule 5, Ala. R.App. P., from the denial of its motion for a summary judgment. We affirm.
 Facts and Procedural History
In 1987, AmerUs, then known as Central Life Assurance Company, sold two life insurance policies to Precision Husky Corporation. Both policies were "flexible premium adjustable" key-man insurance policies insuring the life of Bobby Ray Smith, who was at that time the president of Precision Husky. Policy number 2628304 originally carried a face value of $3,000,000, which was later increased to $3,500,000; policy number 2630415 carried a face value of $500,000. Ownership of each policy was eventually transferred to Smith's wife, as trustee of the Bobby Ray Smith Family Trust.
According to the averments of the complaint subsequently filed by Smith, Precision Husky, and the Bobby Ray Smith Family Trust (collectively "the plaintiffs"), "during the course of selling" these life insurance policies, AmerUs, through its agents, made misrepresentations and suppressed material facts regarding the premiums necessary to keep the policies in force. Specifically, according to the plaintiffs, AmerUs and its agents used "projections" and "illustration statements" to falsely represent that the premiums on those key-man policies would remain "level" during the 42-year period during which the premiums were due. According to the plaintiffs, AmerUs knew that the premiums would eventually be raised.
On November 1, 2002, the plaintiffs sued AmerUs, alleging misrepresentation, suppression, negligent/wanton hiring, training, or supervising, and breach of contract. They specifically alleged that in agreeing to purchase the policies they had relied upon the representations and suppressions made by AmerUs. On August 3, 2004, AmerUs filed a motion for a summary judgment and a brief supporting that motion. In its brief, AmerUs contended that the plaintiffs' claims were precluded by the doctrines of res judicata and collateral estoppel because, AmerUs asserted, those claims had already been fully adjudicated in a class action brought in the United States District Court for the Northern District of California,Bhat v. AmerUs Life Insurance Co., No. 96-4627 (N.D.Cal. 1999).[1] On March 31, 2005, the trial court denied AmerUs's motion for a summary judgment. AmerUs petitioned this Court for permission to appeal, presenting five controlling questions of law to be answered if we granted permission to appeal. We *Page 512 
granted permission to appeal as to only one of those questions:
 "Whether the [p]laintiffs' claims are barred by res judicata, collateral estoppel and release as a result of the class action previously filed, settled, and still pending in the United States District Court for the Northern District of California, Bhat v. AmerUs Life Ins. Co."
 Standard of Review "This Court reviews a summary judgment de novo. Turner v. Westhampton Court, L.L.C., 903 So.2d 82, 87 (Ala. 2004). We seek to determine whether the movant has made a prima facie showing that there exists no genuine issue of material fact and has demonstrated that the movant is entitled to a judgment as a matter of law. Turner, supra. In reviewing a summary judgment, this Court reviews the evidence in the light most favorable to the nonmovant. Turner, supra. Once the movant makes a prima facie showing that he is entitled to a summary judgment, the burden shifts to the nonmovant to produce `substantial evidence' creating a genuine issue of material fact. Ala. Code 1975, § 12-21-12; Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Fla., 547 So.2d 870, 871
(Ala. 1989)."
Muller v. Seeds, 919 So.2d 1174, 1176-77 (Ala. 2005).
 Analysis Bhat v. AmerUs Life Insurance Co., the class action AmerUs contends precludes the plaintiffs' action, was settled in 1999. Upon settlement of that class action, the plaintiffs, as members of the class, were notified of their rights: do nothing and thereby remain in the class and accept the settlement; object to the settlement; or opt out of the settlement. They were provided a copy of the settlement agreement between AmerUs and the class representatives, which itself included a "Release and Covenant Not to Sue" ("the release"). The release admonished all prospective class members to read it carefully because it would "affect your rights if you remain in the class." The plaintiffs did not opt out of the class and were subsequently notified that their settlement payment had been credited to their policy account. By accepting the settlement, the plaintiffs bound themselves to the terms of the release, which was eventually made a part of the district court's "Final Order and Judgment." The release provided, in pertinent part:
 "1. Release of Claims. Effective upon the Final Settlement Date, Plaintiff and each and every Class Member hereby expressly agree that neither they nor any [other] persons . . . shall now or hereafter institute, maintain or assert against AmerUs . . ., either directly or indirectly, on their own behalf . . ., and that they forever release and discharge [AmerUs] from, any and all causes of action, claims, damages, equitable, legal and administrative relief, interest, demands or rights . . ., whether known or unknown, whether based on federal, state or local statute, ordinance, regulation, contract, common law or any other source, that have been, could have been, may be or could be alleged or asserted now or in the future by . . . any Class Member against [AmerUs] . . . on the basis of, connected with, arising out of, or relating to, in whole or in part, any of the following (all of which acts, omissions, facts, matters, transactions, occurrences *Page 513 
and representations are collectively referred to as the `Released Transactions'):
 "a. Any or all of the acts, omissions, facts, matters, transactions, breaches, occurrences or representations that have been, could have been, may be or could be directly or indirectly alleged, asserted, described, brought, set forth or referred to in the Lawsuit [against AmerUs], including without limitation:
 "(1) Any or all of the acts, omissions, facts, matters, transactions or occurrences, or any oral or written statements or representations or illustrations made or given at or after the issuance of the Policies, in connection with or directly or indirectly relating to (A) the amount of or calculation of account values or cash values, (B) the deduction of cost of insurance charges or other charges, (C) the crediting (or failure to credit) interest or dividends to Policies, (D) any changes or adjustments in such deductions and/or interest crediting (relating to or in connection with [a federal tax not here at issue] or for any other reason) and any need for increased premiums or additional premiums as a result of such changes or adjustments, or (E) any other matters relating to or affecting account values, cost of insurance rates, credited interest, dividends, and/or policy values; and/or
 ". . . .
 "(3) Any claim alleging that AmerUs made inaccurate or misleading disclosures and/or omitted to make disclosures to its policyowners concerning account values, cash values, cost of insurance charges or changes thereto, or interest credits to or in connection with the Policies. . . ."
The release further provided:
 "4. Unknown Claims. In connection with this Release, Plaintiff and the Class Members acknowledge that they are aware that they may hereafter discover claims or damages presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true with respect to the Released Transactions and all claims released herein. Nevertheless, it is the intention of Plaintiff and the Class Members in executing this Settlement Agreement and in consideration of receiving the Settlement Payments hereunder to fully, finally and forever to [sic] settle and release all such matters, and all claims relating thereto, which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any actions). . . ."
AmerUs contends that the plaintiffs' claims fall within the claims described in paragraphs 1.a.(1) and 1.a.(3) of the release. Specifically, AmerUs asserts that the plaintiffs' claims relate to
 "(A) the amount of or calculation of account or cash values, (B) the deduction of cost of insurance charges, (C) the failure to credit interest, and (D) the changes to the deductions and credits and the need for increased premiums as a result. Further, [the plaintiffs'] suppression claim is clearly a claim connected with the allegation that AmerUs `omitted to make disclosures to its policyholders concerning account values, cash values, cost of insurance charges or changes thereto and interest credits to or in connection with the Policies.'"
(AmerUs's brief, at 21; emphasis in original.) This quoted excerpt from the brief is the extent of AmerUs's explanation as to why the plaintiffs' claims fall within the *Page 514 
description of transactions released by the class members inBhat. The plaintiffs respond with similar generality, stating only (1) that the claims released by the class members in Bhat were those occurring "at or after the issuance of the Policies" or involving "policyholders," and noting that they allege that the misrepresentations to them were made before the issuance of the key-man policies, and (2) that their fraud claims are less specific than the claims released by the members of the Bhat class.
The quotation from AmerUs's brief set forth above contains five reasons the plaintiffs' claims allegedly fall within the release incorporated into the final order in Bhat. The first four of those reasons, delineated as (A), (B), (C), and (D), are all derived from paragraph 1.a.(1) of the release. As the plaintiffs correctly note, however, that subsection specifically relates only to "oral or written statements or representations or illustrations made or given at or after the issuance ofthe Policies." (Emphasis added.) The "projection statements" and "illustrations" about which the plaintiffs complain were allegedly made in the course of negotiations for the policies, i.e., before the policies were issued, not "at or after" the issuance of those policies.
AmerUs, in its reply brief, essentially concedes that the language in the release describing the claims released thereby refers only to representations occurring "at or after" the policies were issued. It argues, however, that a recital within the settlement agreement demonstrates that Bhat
covered more than acts occurring "at or after" issuance of the policies. Specifically, AmerUs, quoting from Recital C of the settlement agreement, states:
 "[I]n summarizing the fraud claims in Bhat
the settlement documents state: `Plaintiff further claims that Defendants made inadequate or misleading disclosures' regarding the cost of insurance charges and interest credits."
(AmerUs's reply brief, at 5.) This recital, AmerUs argues, indicates that the fraud claims alleged in Bhat were "not limited in time." (AmerUs's reply brief, at 5.)
Assuming, for the sake of further analysis, that the recital quoted by AmerUs — as opposed to the release specifically describing the released claims — determines the scope of the settlement agreement in Bhat, AmerUs's assertion is nevertheless incorrect. Recital C further provides, in pertinent part:
 "The [Bhat ] Lawsuit alleges that [AmerUs] . . . made improper charges or failed to make credits to certain of its universal life policies, all of which had a negative impact on the account and cash values of those universal life policies. It is alleged that these improper charges resulted from improper increases to the cost of insurance and cost of insurance rates, and that these inadequate credits resulted from improper reductions in or the failure to credit interest or dividends, all in violation of the terms of these universal life policies. Among other things, [Bhat] claimed that [AmerUs] improperly passed on increased tax expenses that were incurred by [it] as a result of Congress' 1990 passage of the Deferred Acquisition Cost Tax (the `DAC Tax') through increased cost of insurance charges and reduced interest and dividend credits to [AmerUs's] universal life policyowners. [Bhat] further claims that [AmerUs] made inadequate or misleading disclosures concerning the foregoing, and that [AmerUs] transmitted such disclosures by mail and wire."
This excerpt from Recital C describes three separate acts of wrongdoing allegedly committed by AmerUs in Bhat: (1) it improperly increased its insurance rates and costs; (2) it improperly reduced or *Page 515 
refused to credit interest and dividends; and (3) it passed on increased tax expenses AmerUs incurred as a result of a new federal tax. Each of those alleged wrongful acts occurred after the issuance and receipt of the insurance policies. After setting forth the alleged wrongdoing, the recital states what AmerUs only partially quotes: "Plaintiff further claims that [AmerUs] made inadequate or misleading disclosuresconcerning the foregoing." (Emphasis added.) In other words, the "inadequate or misleading disclosures" concerned conduct AmerUs had allegedly engaged in subsequent to issuing policies to the Bhat plaintiffs. Thus, even giving consideration to AmerUs's argument that a recital should trump an express release, its argument must fail. Further, because the release relates only to wrongdoing occurring "at or after" the issuance of insurance policies and the instant action alleges wrongdoing before the issuance of insurance policies, the first four "reasons" asserted by AmerUs to indicate that this action is identical to Bhat are meritless.
AmerUs lastly argues that the essence of the plaintiffs' action is that AmerUs "omitted to make disclosures to its policy-holders concerning account values, cash values, cost of insurance charges or changes thereto and interest credits to or in connection with the Policies." (AmerUs's brief, at 21, paraphrasing paragraph 1.a.(3) of the release.) This argument must also fail, because at the time AmerUs allegedly "omitted to make disclosures," i.e., fraudulently suppressed material facts, the plaintiffs were not "policyholders." Rather, they were at most "prospective policyholders."
In accepting the Bhat settlement, the plaintiffs agreed to release AmerUs from all claims they could assert against it, so long as those claims were "on the basis of, connected with, arising out of, or relating to, in whole or in part," the released claims. Obviously, that release did not cover other matters unrelated to the subject of theBhat class action. The instant action brought by the plaintiffs against AmerUs does not appear to fall within the description of the claims barred by the release. Therefore, AmerUs has failed to make the required showing that it was entitled to a summary judgment on whether the plaintiffs' claims were precluded by the Bhat settlement; thus, the trial court did not err in denying AmerUs's motion.
 Conclusion
The order of the trial court denying AmerUs's motion for a summary judgment is affirmed.
AFFIRMED.
NABERS, C.J., and SEE, LYONS, STUART, SMITH, BOLIN, and PARKER, JJ., concur.
[1] Bhat is not a published opinion.