Larry Shane Scott sued Armando Villegas, Jr., alleging negligence and wantonness in connection with a motor-vehicle accident in which Scott was injured; he demanded a trial by jury. Villegas moved for a summary judgment, based on Alabama's Guest Statute, Ala. Code 1975, § 32-1-2, arguing that there was no evidence of wantonness, which would be required for liability to exist under the Guest Statute. Scott conceded that he was a guest in Villegas's automobile, but argued that he had the substantial evidence of wantonness necessary to create a fact question for the jury's determination. The trial court entered a summary judgment for Villegas. Scott appeals from the summary judgment, but only as to the count alleging wantonness.
Our standard for reviewing a summary judgment is well settled. See Ex parte Coleman, 706 So.2d 392 (Ala. 1997).
Scott argues that he presented the substantial evidence of wantonness necessary to create a jury question as to whether Villegas was liable under the Guest Statute and thereby to defeat Villegas's motion for summary judgment. According to Scott, there was substantial evidence from which a jury could reasonably infer that Villegas knew he was unable to safely handle the automobile he was driving, an automobile with which he was unfamiliar, "especially when giving it gas," but that he persisted in operating the automobile and operated it with knowledge that injury to himself or others would likely or probably result. Clearly, Scott says, the jury reasonably could have inferred that Villegas, who had lost control of the automobile three times before this particular accident, and in a manner similar to the way in which he lost control in this accident, knew the automobile was likely to spin or fishtail out of control and that he continued to drive the automobile heedless of the consequences.
For Villegas to be liable under the Guest Statute, Scott had to show that Villegas's *Page 643 
actions amounted to wanton conduct. The Guest Statute, §32-1-2, reads:
 "The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."
(Emphasis added.) In Alfa Mutual Ins. Co. v. Roush [Ms. 1950232, September 11, 1998] ___ So.2d ___ (Ala. 1998), this Court clarified the definition of "wantonness":
 "`Wantonness' is statutorily defined as `[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others.' Ala. Code 1975, § 6-11-20 (b)(3). `Wantonness' has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. Rozeman v. Central Bank of the South, 646 So.2d 601 (Ala. 1994)."
Wantonness requires more than a mere showing of some form of inadvertence on the part of the driver; it requires a showing of some degree of conscious culpability. See Ex parte Anderson,682 So.2d 467, 469 (Ala. 1996); see, also, George v. Champion Ins.Co., 591 So.2d 852 (Ala. 1991). "The actor's knowledge may be proved by showing circumstances from which the fact of knowledge is a reasonable inference; it need not be proved by direct evidence." Hamme v. CSX Transp., Inc., 621 So.2d 281, 283 (Ala. 1993).
The applicable standard or review requires us to view the evidence in the light most favorable to Scott, the nonmoving party. Viewed in that light, the evidence suggests the following facts:
Villegas had just purchased a 1990 Ford Mustang GT-50 model automobile and at the time of the accident he was taking Scott to get fender trim for Scott's automobile. Scott was a nonpaying guest in Villegas's automobile. Villegas had driven the automobile only one time before he bought it and he was "kind of not used to" driving it because, he said, it was "souped up." The automobile had a 5-speed transmission and a V-8 engine. According to Villegas, "It was a fast car. . . . It was bad."
On the day of the accident, it had been raining and the roads were wet; at times it was misting. When Villegas pulled out of the driveway, around 4:30 or 5:00 p.m., the automobile stalled. Scott asked if he could drive. Scott had driven the automobile several times while it was owned by the person from whom Villegas purchased it. Villegas told him, "No. I want to drive my car."
Thereafter, as Villegas was driving down the road, he "[spun] off" because, he said, "I wasn't used to it because it was tight gears and you had to give it some gas. So I mean I fishtail[ed] a little bit, not much." At that point, Scott again asked if he could drive, and Villegas told him, "I want to drive my car." Then, at an intersection with a traffic light, Villegas "gave it a little too much gas and it spun a little bit more." Once again, Scott asked if he could drive, and Villegas told him, "I want to drive my car."
At another intersection with a traffic light, Villegas "[spun] off again." After this incident, Villegas told Scott, "If I mess up one more time, you can drive the car."
Subsequently, "because [Villegas and Scott were] in a hurry to get" to his destination, he shifted from fifth gear into third gear and passed another automobile; Villegas's automobile went into a spin, struck another automobile, spun some more, and turned over. When Villegas was asked what he thought caused the spin, he testified as follows:
 "I believe that when I did it — well, it was a wet road. And I believe it hydroplaned or, then again, it was a lot of power. I did turn it over. And right when I turned the steering wheel, when I was switching lanes, my car spinned. It went sideways."
". . . .
"I was going normal speed.
". . . . *Page 644 
 "45 [mph]. Because I just threw it down.
". . . .
 "[W]hen I shifted up, the RPM gauge went up and I gave it a little more power, and that's what happened."
According to Scott, the following occurred:
 "It wasn't really raining. It had been raining earlier and it was misty a little bit and wet.
". . . .
 "It [was] a four-lane road [where Villegas was passing; he went from one lane to the other lane, both lanes going in the same direction.]
". . . .
 "[Villegas was not speeding or doing anything of that nature.] He went from fifth to third in a power car and punched the gas, and we lost traction. . . . He went from fifth to third and punched it, . . . and went in between two cars. And as soon as we left — we [were] here beside her and there was another car here, just enough room for him to fit. And as soon as we left his lane we were sideways. Before we even left the lane, we were sideways."
We are convinced from our review that Scott presented substantial evidence from which the jury could infer that Villegas was guilty of "wanton conduct," as that term is defined in Alabama statutory law and caselaw. Alfa Mut. Ins. Co. v.Roush, supra. In other words, viewing the evidence in the light most favorable to Scott, we conclude that there is substantial evidence from which the jury could find that Villegas acted with a reckless or conscious disregard of the rights or safety of others by consciously driving the automobile while knowing that he could not control it on the wet pavement and knowing that if he lost control of it, injury would likely or probably result. Therefore, the question of wantonness should have been submitted to the jury.
We reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, ALMON, SHORES, KENNEDY, COOK, SEE, and LYONS, JJ., concur.