Samantha Phillips, a minor, by and through her father Shawn M. Phillips, as next friend, appeals from a summary judgment entered by the Mobile Circuit Court in favor of United Services Automobile Association ("USAA"). We affirm.
 I. Facts and Procedural History
On July 11, 2004, Samantha and her friend, Katie Catlin, were involved in a single-car accident. At the time of the accident, Katie was driving her father's truck; Samantha was a passenger in the *Page 466 
truck. Samantha and Katie were returning to Katie's home, having just returned a movie to a movie-rental store. As the two were proceeding west on Cottage Hill Road, Katie recognized two of her friends who were in an automobile that was stopped at an exit from a subdivision, waiting to turn onto Cottage Hill Road. As Katie and Samantha passed by the subdivision exit, Katie turned and waved to her friends, taking her eyes off the road. As she did so, the truck began to cross the centerline of the road and enter the eastbound lane. As the truck began to veer into the eastbound lane, Samantha got Katie's attention by exclaiming "Katie! Katie! Katie!" After hearing her name, Katie returned her attention to the road and saw an oncoming car. She swerved to the right, causing the truck to leave the roadway and enter the shoulder of the westbound lane. Katie then swerved back to the left and lost control of the truck. The truck crossed Cottage Hill Road, flipped over, and came to rest in a yard bordering the eastbound lane. Samantha was ejected from the truck during the accident and sustained an injury to her back.
On February 14, 2005, Samantha, acting through her father, sued Katie and USAA, which provided an automobile insurance policy to the Phillipses. The complaint alleged that Katie had acted wantonly in causing the accident and that USAA was liable for the payment of underinsured-motorist benefits to Samantha because the liability limits of Katie's automobile insurance would not adequately compensate Samantha for the injuries she sustained in the accident.
On May 1, 2006, USAA filed a motion for a summary judgment. It argued that it could be liable for the payment of underinsured-motorist benefits to Samantha only if, among other things, Samantha could demonstrate that Katie was legally liable for Samantha's injuries. It argued that, under the Alabama Guest Statute, Ala. Code 1975, § 32-1-2, Katie could be liable to Samantha only if she had acted wantonly in causing Samantha's injuries.[1] There was no evidence, it asserted, that Katie had acted wantonly with regard to the accident.
Shortly after USAA filed its summary-judgment motion, Samantha settled her claim against Katie, leaving only her claim against USAA. In her response to USAA's motion, Samantha argued that there was evidence demonstrating that Katie had acted wantonly with regard to the accident, particularly based on "her awareness of several driving rules of conduct" that Katie had learned in her driver's education course at her high school. According to Samantha, Katie "appreciated an injury would more than likely occur if she ignored the rules of conduct taught in her driver's training and reenforced during her driver's license exam," and Katie's "conscious disregard for a driver's rules of conduct resulted in her passenger sustaining significant physical injuries." Thus, Samantha argued, USAA's motion was due to be denied.
On June 9, 2006, the trial court granted USAA's summary-judgment motion and entered a summary judgment in its favor. Samantha appeals. *Page 467 
 II. Standard of Review
The standard by which we review a summary judgment is well settled:
 "This Court reviews a summary judgment de novo. Turner v. Westhampton Court, L.L.C., 903 So.2d 82, 87 (Ala. 2004). We seek to determine whether the movant has made a prima facie showing that there exists no genuine issue of material fact and has demonstrated that the movant is entitled to a judgment as a matter of law. Turner, supra. In reviewing a summary judgment, this Court reviews the evidence in the light most favorable to the nonmovant. Turner, supra. Once the movant makes a prima facie showing that he is entitled to a summary judgment, the burden shifts to the nonmovant to produce `substantial evidence' creating a genuine issue of material fact. Ala. Code 1975, § 12-21-12; Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). `Substantial evidence' is `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Fla., 547 So.2d 870, 871
(Ala. 1989)."
Muller v. Seeds, 919 So.2d 1174, 1176-77 (Ala. 2005).
 III. Analysis
Samantha did not in the trial court and does not on appeal challenge USAA's assertion that it can be liable to her only if she can demonstrate that Katie was liable for the injuries Samantha sustained. She also does not challenge USAA's assertion that the Alabama Guest Statute, Ala. Code 1975, § 32-1-2, applies to this case and prevents recovery against it absent a showing that Katie acted wantonly in causing Samantha's injuries. Samantha argues only that she presented substantial evidence indicating that Katie acted wantonly, so that a summary judgment in favor of USAA was inappropriate.
In Ex parte Anderson, 682 So.2d 467 (Ala. 1996), this Court discussed the concept of wantonness in the context of operating an automobile:
 "In a case subject to the Guest Statute, a plaintiffs showing of `wanton misconduct' requires more than a showing of some form of inadvertence on the part of the driver; it requires a showing of some degree of conscious culpability. George v. Champion Ins. Co., 591 So.2d 852 (Ala. 1991).
 "What constitutes wanton misconduct depends on the facts presented in each particular case. Central Alabama Electric Cooperative v. Tapley, 546 So.2d 371 (Ala. 1989); Brown v. Turner, 497 So.2d 1119 (Ala. 1986); Trahan v. Cook, 288 Ala. 704, 265 So.2d 125 (1972). A majority of this Court, in Lynn Strickland Sales Service, Inc. v. Aero-Lane Fabricators, Inc., 510 So.2d 142
(Ala. 1987), emphasized that wantonness, which requires some degree of consciousness on the part of the defendant that injury is likely to result from his act or omission, is not to be confused with negligence (i.e., mere inadvertence):
 "`Wantonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability. Implicit in wanton, willful, or reckless misconduct is an acting, with knowledge of danger, or with consciousness, that the doing or not doing of some act will likely result in injury. . . .
 "`Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due *Page 468 
care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious or intentional act. "Simple negligence is the inadvertent omission of duty; and wanton or willful misconduct is characterized as such by the state of mind with which the act or omission is done or omitted." McNeil v. Munson S.S. Lines, 184 Ala. 420, [423], 63 So. 992 (1913). . . .
 "`"Willful and wanton conduct has a well-defined meaning at law. It is sometimes expressed in terms of `reckless disregard of the safety of another.' Willful and wanton conduct should not be confused with negligence. It has been correctly stated that the two concepts are as `unmixable as oil and water.'"
 "`. . . .
 "`". . . Willfulness or wantonness imports premeditation, or knowledge and consciousness that the injury is likely to result from the act done or from the omission to act, and strictly speaking, is not within the meaning of the term `negligence,' which conveys the idea of inadvertence, as distinguished from premeditation or formed intention."'
 "510 So.2d at 145-46 (citations omitted.) See also, Central Alabama Electric Cooperative v. Tapley, 546 So.2d 371 (Ala. 1989)."
682 So.2d at 469-70.
On appeal, Samantha does not challenge the principles articulated in Anderson. She relies on two cases decided by this Court in an effort to support an argument that Katie's actions in causing the accident constituted wantonness:Sellers v. Sexton, 576 So.2d 172 (Ala. 1991), and Scottv. Villegas, 723 So.2d 642 (Ala. 1998). This Court discussed these two cases in Tolbert v. Tolbert,903 So.2d 103 (Ala. 2004):
 "In Sellers, another guest-statute case, the automobile driver was proceeding along a highway with which she was intimately familiar on a day in January when travel advisories had been issued because of expected inclement weather and the possibility of freezing precipitation. The day before, the county engineer's office had placed a coarse type of slag on several bridges in anticipation of the freezing weather. The route the driver and her passenger were traveling took them across a series of three bridges. She was traveling `at or about the maximum legal speed of 55 m.p.h. when she crossed the first of the three bridges.' 576 So.2d at 173. She observed that there was loose rock and stone on that bridge. `[S]he did not slow down as she approached the second bridge,' although `[s]he acknowledged that she normally slowed down before entering this bridge because of a wide curve to the left.' 576 So.2d at 173. Upon entering the second bridge, she lost control of her car, `first pulling to the right and then, in an attempt to correct the direction of the vehicle, steering to the left and traveling completely into the lane of oncoming traffic' 576 So.2d at 173. The ensuing collision resulted in the death of the passenger. This Court concluded that the evidence, establishing that the driver proceeded onto the second bridge while continuing her speed at or near the maximum posted speed limit, at a time when she `should have known' that the bridge had been spread with slag in preparation for the bad weather and with knowledge that there was a wide curve that would obstruct her view of any oncoming traffic constituted substantial evidence to support the wantonness claim. 576 So.2d at 175. *Page 469 
 "In Scott, Villegas was driving an automobile he had just purchased and that he had driven only one time previously. Scott, his passenger, had driven the automobile several times while it was owned by the seller. Villegas was well aware that the vehicle (a 1990 Ford GT-50) was `souped up,' with a 5-speed transmission and a V-8 engine. `According to Villegas, "it was a fast car. . . . It was bad."' 723 So.2d at 643. In pulling out of the driveway at the start of the trip, Villegas stalled the automobile, and Scott asked if he could drive. Villegas refused. As Villegas then drove the car down the road, he `spun off because, as he later explained, he was not used to the `tight gears,' which required that the driver give the engine some gas. Accordingly, he `fishtail[ed] a little bit.' 723 So.2d at 643. It had been raining and the roads were wet. Scott again asked if he could drive and Villegas declined, stating that he wanted to drive his own car. Next, at an intersection Villegas ` "gave it a little too much gas and it spun a little bit more."' 723 So.2d at 643. Scott again asked if he could drive and Villegas again insisted on driving. At another intersection Villegas spun off again. He then told Scott' "[i]f I mess up one more time, you can drive the car."' Id.
 "`Subsequently, "because [Villegas and Scott were] in a hurry to get" to [their] destination, [Villegas] shifted from fifth gear into third gear and passed another automobile; Villegas's automobile went into a spin, struck another automobile, spun some more, and turned over. When Villegas was asked what he thought caused the spin, he testified as follows:
 "`"I believe that when I did it — well, it was a wet road. And I believe it hydroplaned or, then again, it was a lot of power. I did turn it over. And right when I turned the steering wheel, when I was switching lanes, my car spinned. It went sideways.
 "`". . . .
 "`"I was going normal speed.
 "`"45 [mph]. Because I just threw it down.
 "`"[W]hen I shifted up, the RPM gauge went up and I gave it a little more power, and that's what happened."'
 "723 So.2d at 643-44.
 "The Court concluded that `there is substantial evidence from which the jury could find that Villegas acted with a reckless or conscious disregard of the rights or safety of others by consciously driving the automobile while knowing that he could not control it on the wet pavement and knowing that if he lost control of it, injury would likely or probably result.' 723 So.2d at 644."
903 So.2d at 115-17.
As she did in the trial court, Samantha bases her argument that Katie acted wantonly on the fact that Katie was taught rules of safe driving in the driver's education course she took. In doing so, she relies on the following exchange from Katie's deposition involving questions by Samantha's attorney:
 "Q. I have just a couple of follow-ups. Okay? And as I understand, you went through a driver's training before you obtained your license; correct?
 "A. Yes, sir.
 "Q. And you ultimately had to take a driver's safety course or driver's course with the State of Alabama to get your license?
 "A. Yes, sir. *Page 470 
 "Q. And at any point during that time, did you learn that concentration is one of the most important elements of driving?
 "A. Yes, sir.
 "Q. And things such as distracting conversations could result in an accident?
 "A. Yes, sir.
 "Q. And you were also during these courses trained to keep your eyes on the road at all times?
 "A. Yes, sir."
Based on this passage, Samantha argues that, "[a]t the time of the collision, [Katie] was conscious an accident would more than likely occur if she disregarded the rules taught in her driver's training and reenforced during her driver's exam." She concludes that "[t]he level of [Katie]'s conduct established `more than a showing of some form of inadvertence on the part of the driver,'" and that "a jury could and should infer [that Katie]'s conduct rose to the level of wantonness."
USAA argues that the facts in this case more closely resemble those present in George v. Champion Insurance Co.,591 So.2d 852 (Ala. 1991), which this Court described as follows:
 "[T]he plaintiff, Elizabeth Karen George, age 16, was the passenger in an automobile driven by her best friend, Shannon Plaiss, also 16. The two were going to a birthday party. Shannon was driving a white 1979 Ford Pinto automobile, proceeding south on Memorial Parkway in Huntsville. It was a full car. Shannon was driving, Scott White was sitting in the front passenger seat, Karen's sister Paula was sitting beside White. Karen and her sister Kelly George were in the rear seat. It was Sunday afternoon and a clear day. The occupants of the car were engaged in conversation. As the car approached the intersection of the Parkway and Golf Road, Shannon saw that the traffic light was green. She glanced back in conversation. When she looked forward, the traffic light was red. Scott cried out for her to stop. Shannon testified in her deposition that she tried to put her foot on the brake pedal, but missed and hit the clutch pedal. She ran the red light, and her automobile collided with a vehicle that was turning left in front of her."
591 So.2d at 854. Affirming the trial court's judgment, this Court held that Shannon's actions did not rise to the level of wantonness, stating that "[w]hile the facts show inadvertence on the part of the driver, they do not amount to wantonness, which requires some degree of conscious culpability."591 So.2d at 854.
In the present case, even reviewing the evidence, as we must, in the light most favorable to Samantha, the nonmovant for summary judgment, we agree with USAA that Samantha has not presented substantial evidence indicating that Katie acted wantonly. Samantha has not put forward substantial evidence tending to show that Katie had "knowledge and consciousness" that a likely result of momentarily waving to her friends was an automobile accident in which Samantha would be injured. What Samantha has shown is that Katie had knowledge as to how to properly and safely operate an automobile. Presumably, anyone who obtains a driver's license in the State of Alabama has such knowledge. See, generally, Ala. Code 1975, § 32-6-3(a) ("Every person who applies for an initial Alabama driver's license issued by the Department of Public Safety under this article shall be given and successfully pass an examination before the issuance of a driver's license."). Samantha's reasoning would convert every failure to properly or safely operate an automobile resulting from "inattention, thoughtlessness, . . . heedlessness, [or] a lack of *Page 471 
due care" into an act of wantonness on the ground that the driver knew or should have known that such inattention, thoughtlessness, or heedlessness is improper.
 IV. Conclusion
Because Samantha presented substantial evidence of nothing more than that Katie's actions in causing the accident were inattentive, thoughtless, or heedless, i.e., negligent, we conclude that the trial court properly entered a summary judgment in favor of USAA, and we affirm that summary judgment.
AFFIRMED.
COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.
[1] Section 32-1-2, Ala. Code 1975, provides:
 "The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the willful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."